Mr. Tommy Reed, Executive Director Arkansas Professional Bail Bondsman Licensing Board 101 East Capitol, Suite 117 Little Rock, AR 72201
Dear Mr. Reed:
I am writing in response to your request for my opinion on the following question:
 Pursuant to provisions of ACA 17-19-202(d)(4), is the transfer of an agent's license from one professional bail bond company to another an administrative/clerical function of the licensing board which occurs by payment of the transfer fee, or is it a valid exercise of the regulatory power of the board to impose a reasonable waiting period (two weeks), during which the agent cannot transact business, to allow the company from which the agent is transferring to verify that all monies have been collected and all documentation has been satisfactorily completed?
RESPONSE
In my opinion, the Arkansas Code does not authorize the Arkansas Professional Bail Bondsman Licensing Board (the "Board") to enact any rule or regulation effectively suspending an agent's license during the time it takes the Board to confirm that the agent has observed his legal obligations in transferring from one professional bail bond company to another.
With respect to the Board's rulemaking authority, the Arkansas Supreme Court has observed in Arkansas Professional Bail Bondsman Licensing Boardv. Frawley, 350 Ark. 444, 448, 88 S.W.3d 418 (2002):
 Bail bondsmen and bail bond companies are required to conduct their bail bond businesses in conformity with the statutes governing the profession, Ark. Code Ann. § 17-19-101 et seq. (Repl. 2001), and the rules and regulations promulgated pursuant to Ark. Code Ann. § 17-19-106 (Repl. 2001), the Arkansas Professional Bail Bond Company and Professional Bail Bondsman Licensing Act. The Act provides that the Licensing Board has the authority to administer and enforce the provisions of Ark. Code Ann. § 17-19-101 et seq., as well as the rules and regulations promulgated in Ark. Code Ann. § 17-19-106, in order to carry out its duty of licensing and regulating professional bail bondsmen and professional bail bond companies.
Subsection 17-19-106(b)(5) of the Code (Repl. 2001) defines the scope of the Board's rulemaking authority as follows:
 The board shall have the authority to adopt and enforce such reasonable rules and regulations as it shall determine to be necessary to enable it to effectively and efficiently carry out its official duty of licensing and regulating professional bail bond companies and professional bail bondsmen.
Section 17-19-108 further provides:
 The Professional Bail Bond Company and Professional Bail Bondsman Licensing Board shall adopt such reasonable rules and regulations as it shall deem necessary to assure the effective and efficient administration of §§ 17-19-107, 17-19-212, and 17-19-401 et seq.[1]
In my opinion, the Board's regulatory authority over licensed bail bondsmen under these statutes is clearly bounded both by the restrictions on the Board's authority expressly set forth in title 17, chapter 19 of the Code, as well as by constitutional principles of due process.
Among the statutory conditions applicable to a licensed bail bondsman's conduct of business is A.C.A. § 17-19-110(a) (Supp. 2003), which provides:
 A licensed bail bond agent shall be permitted to write a bail bond in any county with a current copy of his or her license if:
 (1) The agent has a current license with a current licensed professional bail bond company; and
 (2) The agent and the agent's company are in good standing with the courts in the jurisdiction where the bond is to be posted.
Subsection 17-19-201(b) further provides:
 A professional bail bondsman shall not execute or issue an appearance bond in this state without holding a valid appointment from a professional bail bond company and without attaching to the appearance bond an executed and numbered power of attorney referencing the professional bail bond company.
Specifically with respect to the question of how a bail bondsman may move from one company to another, A.C.A. § 17-19-202(d)(4) provides:
 Any agent that transfers his or her license from one professional bail bond company to another shall pay a transfer fee of two hundred fifty dollars ($250) to the board.
Specifically with respect to the question of when the Board may suspend or revoke a license, A.C.A. § 17-19-210 sets forth a series of acts of misconduct that might warrant such action, as well as pursuing the criminal penalties set forth at A.C.A. § 17-19-102. Subsection17-19-210(a)(7) lists as one of these bases for suspension having "[f]ailed in the applicable regular course of business to account for and to pay premiums held be the licensee in a fiduciary capacity to the professional bail bond company or any other person entitled thereto." Subsection 17-19-301(d)(5)(A) further provides in pertinent part:
 [T]he individual licenses of . . . individual employees of the professional bail bond company may be suspended or revoked by the commissioner pursuant to the administrative procedures provided in this chapter if the individual licensee fails to comply with his or her duties in proper collection of the bail bond premiums earmarked for later payment to the fund pursuant to this subsection, if he or she converts such moneys to his or her own use, or commits other infractions in regard to collection of such premium amounts.
Subsection 17-19-210(f) further provides for a summary suspension under the following circumstances:
 If the board determines that the public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, a summary suspension of a license issued pursuant to this chapter may be ordered pending an administrative hearing before the board, which shall be promptly instituted.
Accord A.C.A. § 25-15-211(c) (Repl. 2002) (authorizing summary suspension of licenses in general under the Administrative Procedures Act when these emergency circumstances exist, pending a prompt administrative hearing).
In my opinion, the foregoing statutes clearly provide that the Board may summarily suspend a bail bondsman's license only if it has made a provisional determination that the licensee has committed some infraction of the sort listed in A.C.A. § 17-19-210, and only then if the suspension qualifies as "emergency action" under A.C.A. § 17-19-210(f), subject to review at a promptly instituted administrative hearing. Subsection17-19-202(d)(4) is further unambiguous in declaring that a licensed bail bondsman may transfer his license from one professional bail bond company to another merely upon payment of the $250 fee.[2] Nothing in chapter 19 of title 17 even remotely suggests that the Board may suspend the business activities of a licensed bail bondsman seeking to transfer his license, apparently without any right to a hearing of any sort, during the time the Board takes to investigate whether the bail bondsman has properly accounted for and paid premiums to the professional bail bond company from which he is transferring. On the contrary, A.C.A. §17-19-102(a)(7) provides that the Board may suspend a bail bondsman for failing to channel premiums to his former employer only after notice and a hearing — conditions that are flatly inconsistent with a proposed rule providing that the Board will impose what amounts to a temporary suspension while it investigates for misconduct, apparently regardless of whether probable cause exists to suspect misconduct. Moreover, A.C.A. §17-19-202(d)(4) conditions a duly licensed bail bondsman's transferring his license only upon his paying $250, not upon his paying that amount and then suspending business activities while the Board investigates for misconduct.
In short, I believe the Board is precluded under the express terms of the Code from adopting a rule of the sort proposed in your request. Having thus concluded that the proposed rule would flout current statutory law, I need not address in any detail what would be the obvious constitutional infirmity of a rule suspending a licensed individual's business activities without probable cause and without any notice or hearing. SeeCleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property `be preceded by notice and opportunity for hearing appropriate to the nature of the case.' Mullane v. Central Hanover Bank Trust, Co., 339 U.S. 306-313 (1950).")
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Section 17-19-107 exempts from continuing education requirements bail bondsmen over the age of 65 who have been licensed for at least 15 years. Section 17-19-212 obligates the Board to license any applicant who satisfactorily completes the license examination and a minimum course of education. Sections 17-19-401 and -402 prescribe a continuing education program for bail bondsmen.
[2] You report in your factual recitation that the Board currently requires a bail bondsman transferring his license to provide the following:
 • A resignation letter from the agent to the company from which he is resigning, or a letter from the company terminating the agent;
• A completed agent application [for employment with the new agency];
 • A completed Company Statement [declaring that it has investigated the agent and found him qualified];
 • A completed Power of Attorney for the transferring agent from the company under whose license he will be licensed; and
• Payment of the $250 transfer fee.
I believe the Board is acting well within the range of its rulemaking authority in requiring this information, which merely documents that the transfer complies with applicable law.